Case No. <u>4:12-CR-00600-01</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 13 2020

David J. Bradley, Clerk of Court

---

EARNEST GIBSON III,

Petitioner Pro-Se-Defendant,


vs.


UNITED STATES OF AMERICA,

Respondent-Plaintiff.

---

PETITIONER'S MOTION TO AMEND

MEMORANDUM OF LAW IN SUPPORT OF THE

PETITION UNDER U.S.C. § 2255


The Honorable Lee H. Rosenthal, U.S. District Judge

---

Earnest Gibson III
Reg. No. 24386-379
Federal correctional Complex
P.O. Box 3000-Medium
Forrest City, AR 72336
Petitioner Pro-Se-Defendant

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES _____ ii

I.   EVIDENCE OF GOVERNMENT'S UNJUST ENTRAPMENT OF
     PETITIONER _____ 1

II.  RELEVANT CASE IN GOVERNMENT FRAUDULENT SCHEME _____ 3

III. OBSTRUCTION OF JUSTICE _____ 8

IV.  EVIDENCE OF GOVERNMENT DELIBERATE INDIFFERENCE
     ENTRAPMENT _____ 11

V.   GOVERNMENT'S DIRECT ENTRAPMENT ATTEMPTS _____ 25

VI.  GOVERNMENT, KAHN, BULLOCK, FUGERSON, CLARK, ASKEW,
     PRESENTATION OF FRAUDULENT DOCUMENTS _____ 27

VII. INEFFECTIVE ASSISTANCE OF COUNSEL _____ 32

VIII. RECENT FIFTH CIRCUIT APPEAL COURT RULING(S)
      APPLICABLE TO PETITIONER'S CASE _____ 39

CONCLUSION _____ 45

i.

TABLE OF AUTHORITIES

CITATIONS                                                PAGE NO

United States v. Sol Cohen,
431 F.2d 830, 1070 US App. Lexis 7468 _____      2

Outlaw v. United States,
298 US 665, 80 L. Ed. 1389, 56 S. Ct. 747 _____       3

United States v. Whalan,
(1868, DC Mass) 28 F Cas 531, NO 16669 _____       4

United States v. Owen,
(1887, DC Or) 13 Sawy 53, 32 F. 534 _____       4

Coluccio v. United States,
(2004, ED NY) 313 F.Supp 2d 150, 93 AFTR 2d 1944 ____      4

United States v. Twiggs,
(1978, CA3 NJ) 588 F.2d 373 _____       5

United States v. Berg,
(1999, CA8 MO) 178 F.3d 976) _____       5

United States v. Diaz,
(1999 CA10 NM) 189 F.3d 1239, 1999 Colo J C A R 5385 _     5

United States v. Tobias,
(1981, CA5 Ala) 662 F.2d 381, cert den (1982) 457 US 1108,
73 L Ed 2d 1317, 102 S. Ct. 2908 _____         5

United States v. Jimenez Recio,
537 US 270, 154 L. Ed 2d 744, 123 S. Ct. 819 _____       7

Sherman v. United States,
(1958) 356 US 369, 2 L Ed 848, 78 S Ct 819 _____       7

Sorrells v. United States, _____     7

United States v. Jewell,
532 F.2d 697, 49 L Ed 2d 1188, 96 S. Ct. 3173 (1976)_     9

Bowie v. Maddox,
677 F.Supp 2d 276, 75 Fed. R. Serv. 3d (Callaghan) 935
938 (DC Dist Col 2010) _____           11

United States v. Price,
783 F.2d 1132, 113941 (4th Cir. 1986) _____     11

United States v. Henry,
447 US 264, 65 L. Ed. 115, 100 S. Ct. 2183 (1980) ___     20,25

Brewer v. Willams,
430 US 387, 51 L. Ed. 424, 97 S. Ct. 1232 (1972) ____     20,25

Massiah v. United States,
377 US 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964)__     20

Kirby v. illinois,
406 US 682 (1972) _____     25

Bruton v. United States,
391 at 139-40, 20 L Ed 2d 476, 88 S. Ct. 1620 _____     26

United States v. Kennedy,
372 & 3d 686, 693 (4th Cir. 2004) _____     26

Suckle v. Madison General Hospital,
(1973), WD Wis) 362 F.Supp 1196, Affd (1974, CA7 Wis)
499 F.2d 1364. _____     32

Barrio v. McDonough Dist. Hospital,
(1974), SD Ill) 377 F.Supp 317. _____     32

Strickland v. Washington,
466 U.S. 686, 104 S. Ct. 2052, 80 L Ed 2d 674 (1984)_     34

United States v. Ganji,
880 F.3d 760, 767 (5th Cir. 2018) _____     39

Arrendo-Morales,
624 F.2d 681, 683 (5th Cir. 1980) _____     39

United States v. Alvarez,
610 F.2d at 1257 _____     41

Snow Ingredients, Inc. v. SnoWizzard, Inc.,
833 F.3d 512, 526 (5th Cir. 2016) _____     42

United States v. Monsanto,

465 U.S. at 754 _____ 42

United States v. Fuchs,

467 F.3d 889, 897 (5th Cir. 2006) _____ 43

United States v. Dailey,

868 F.3d 322, 326 (5th Cir. 2017) _____ 43

United States v. Grant,

683 F.3d at 643-44 (5th Cir. 2012) _____ 43

STATUTES AND RULES

18 U.S.C. § 2255 _____ 1,11,20

18 U.S.C. § 201(F) _____ 1

U.S. Rev. Stat. § 545 _____ 2

18 U.S.C. § 1320a-7b _____ 3

18 U.S.C. § 220 _____ 3

Fed. R. Crim. P. 52(B) _____ 6

18 U.S.C. § 1505 _____ 8

18 U.S.C. § 1512(B), (2)(A) OR (B) _____ 10

C.F.R. § 424.27 _____ 18,40

42 U.S.C. § 1397 _____ 20

§ 0.735-18 General conduct prejudicial to the Gov't __ 20

§ 0.735-19 Reporting undue influence to superiors ____ 21

§ 56.9 Ensuring Compliance with this Part of Federal
Financial Assistance Programs and Activities _____ 22,24

§ 404.1007 Common Law Employee Status _____ 22

42 U.S.C. § 12101 _____ 35

U.S.C.S. § 664 Theft or Embezzelement from Employee
Benefit Plan _____ 35

§ Strict Construction of the Laws Creating Crimes ____ 36

§ 483.10 Resident Rights _____ 38

42 C.F.R. 424.22.9 _____ 40

§ 5.03 cmt. 2(c)(i)(1985) Model Penal Code _____ 42

BOB CASEY UNITED STATES COURTHOUSE
515 RUSK STREET, ROOM 5300
HOUSTON, TEXAS 7702-2600

EARNEST GIBSON III,                )
          Petitioner,              )
                                   )
                                   )   CRIM. ACT. NO. 4:12-CR-00600-01
                                   )
v.                                 )    CIVIL NO. 419-CV-2143
                                   )
                                   )
                                   )
UNITED STATES OF AMERICA,          )   Honorable Judge Lee H. Rosenthal
          Respondant.              )   United States District Judge

---

## PETITIONER'S MOTION TO AMEND § 2255

---

I. <u>EVIDENCE OF GOVERNMENT'S UNJUST ENTRAPMENT OF PETITIONER</u>

Accordingly, the Petitioner Amended his 28 U.S.C. § 2255 motion on, 6/18/19. Whereas, the Petitioner sited 18 U.S.C. § 171(b). Thus, in his amended § 2255, the Petitioner contends that the government's withholding, Highly Secretive Confidential Evidence from the Petitioner was a violation of his Due Process Constitutional Rights. Therefore, the Petitioner hereby amends his § 2255 to provide additional evidence of the government's unjust entrapment of the Petitioner. For example, the government's highly secretive multiple gratuitous payment(s) for official act(s), 18 U.S.C. §201(f) were kept secret from the (1) Petitioner (2) Court and (3) Jury.

1.

Therefore, the Petitioner was Denied his Due Process Right to
Request the Defence of Entrapment.  For example, in <u>United States
v. Sol Cohen</u>, 431 F.2d 830; 1070 U.S. App. Lexis 7468, appeal for
the second circuit, the court ruled "The evidence need only show
that a government agent initiated the payment, not the amount of
pressure the agent applied tojustify an instruction on defendant's
entrapment defense.  <u>Thus, the court reversed the conviction</u>.

It is unlawful for any person acting on behalf of the govern-
ment to promise, offer, or cuases or procures to be promise, offer
or given, any money, or other thing of value with the intent to
influence or action on any question, matter, cause or proceeding
which may at any time be pending, or which may by law be brought
before him in his Official Capicity, or in his place of Trust or
Profit, or with intent to influence him to commit or aid in commit-
ing, or to collude in, or allow, any fraud or make opportunity
(1909 U.S. Lexis 4) for the comission of any fraud, on the United
States, or to induce him to do or omit to do any act in violation
of his lawful duty.

For example, U.S. Rev. Stat. § 545 (U.S. Comp. Stat. 1901,
p. 3680) makes it a crime to bribe any person acting for the United
States in any official function to induce him to do or omit to do
any act in violation of his lawful duty.  The words "lawful duty"
are not to be considered as duty imposed by law or statute, but as
duty lawfully imposed in any way.

Whereas, in the Petitioner's case the government's highly sec-
retive confidential investigation knowingly violated 18 U.S.C. §

2.

1320a-7b Criminal Penalties For Acts Involving Federal Health Care Programs. However, after the government secretly confidentially (1) Caused the participants be kept secret, (2) Paid the participants to commit fraud, (3) Falsified records to cause the Petitioner to be charged with "Deliberate Indifference."

Therefore, all of the government's "highly secretive investigation was in violation of 18 U.S.C. § 220 Illegal Renumerations For Referrals To Recovery Homes, Clinical Treatment Facilities And Laboratories. For example, the Petitioner's employer, Riverside General Hospital, owned Clinical Treatment Facilities (i.e. PHP's). Thus, the governemnt secretly paid vulnerable elderly Africian Americans to attend treatment at these facilities (i.e. PHP(s)).

In addition, the government caused these patients, that live in these Personal Care homes to attend the Clinical Treatment Facilities (PHP(s)). Accordingly, the government also paid for the referrals to laboratories. For example, relative to these vulnerable elderly patients the government paid these elderly patients in cash ("Directly," "Bribe") to attend the PHP(s) to undergo Psychiatric, Mental Health and Substance Abuse Treatment.

II. RELEVANT CASE IN GOVERNMENT FRAUDULENT SCHEME

"Defraud," meant not only pecuniary loss but included any defeat of lawful governmental function, such as defrauding United States of doing justice. Outlaw v. United States, (1936, CA5 Tex) 81 F.2d 805 cert den (1936) 298 US 665, 80 L. Ed. 1389, 56 S. Ct. 747.

It was immaterial whether acts were crime independent of conspiracy statute, if there was shown consipiracy to defraud United States. United States v. Whalan, (1868, DC Mass) 28 F Cas 531, No 16669.

Defrauding United States was not limited to conspiracies to frauds as to revenue, but applied to property and rights. United States v. Owen, (1887, DC Or) 13 Sawy 53, 32 F 534.

Term "defraud" as used in 18 U.S.C.S. § 371 not only reaches schems that deprive government of money or property but also protects integrity of U.S. and its agencies, and § 371 covers acts that interfere with or obstruct lawful governmental functions by deceit, craft, or trickery, or at least by means that are dishonest; four elements of Klein conspiracy are (1) defendant entered into agreement with one or more people, (2) to obstruct lawful government function, (3) by deceitful or dishonest means, and (4) comitted at least one overt act in futherance of conspiracy. Coluccio v. United States, (2004, ED NY) 313 F.Supp. 2d 150, 93 AFTR 2d 1944.

Accordingly, the Petitioner contends the governments withholding its secret confidential scheme from Petitioner, Court and Jury, and requesting "Deliberate Indifference" jury instructions, was "Entrapment." Whereas the government was the principal in the Petitioneer's case. Thus, the government knowingly and intentionally violated the "Adverse Agent Doctrine." For example, the rule that an agent's knowledge will not be imputed to the principal if the agent is engaged in fraudulent activities that is part of the fraud.

Nevertheless, the government was the principal but with the unfair jury instructions of "Deliberate Indifference" the government caused the Petitioner to be principal.

Although proof of predisposition to commit crime will bar application of entrapment defense, fundamental fairness aspect of due process will not permit any defendant to be convicted of crime in which police conduct in arranging circumstances which led to commission of crime was "outrageous." United States v. Twigg (1978, CA3 NJ) 588 F.2d 373 (critized in United States v. Berg (1999, CA8 Mo) 178 F.3d 976) and (critized in United States v. Diaz (1999, CA10 NM) 189 F.3d 1239, 1999 Colo J C A R 5385)

Government infiltration of criminal activity is recognized and permissible means of investigation even where government agents supply something of value to criminal since such supply may be necessary to be taken into confidence of illegal entrepreneur; however, government may not instigate criminal activity, provide place, equipment, supplies and know-how, and run entire operation with only meager assistance from defendants without violating fundamental fairness. United States v. Tobias, (1981, CA5 Ala) 662 F.2d 381, cert den (1982) 457 US 1108, 73 L Ed 2d 1317, 102 S Ct 2908.

It should be noted that on "multiple occasions with highly sophiscated equipment the government attempted to cause the Petitioner to commit a fraudulent act (See Confidential Source Withlow evidence, both telephone and video etc, IRS Agent Kheif testimony and affidavit_ _). However, "Over and Over," again and again the Petitioner refused to commit the government's induced crime. However,

the government objected to admission of its entrapment evidence during trial. In addition, during deliberation, the jury requested to see "Entrapment Evidence." However, the request was denied.

The "shock the conscience" standard typically is employed when determining whether governmental action violates due process rights under the Fifth and Fourteenth Amendments. In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. The U.S. Supreme Court has said that the "shock the conscience" standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest, or in some circumstances if it resulted from <u>deliberate indifference</u>.

The "shock the conscience" standard is not reflected in Fed. R. Crim. P. 52(B) itself, not in how the U.S. Supreme Court has applied the plain-error doctrine. The Court repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below. The Court also routinely remands cases involving inadvertent or unintentional errors, including sentencing errors, for consideration of Olano's fourth prong with the understanding that such errors may qualify for relief. The U.S. Supreme Court has never said that Fed. R. Crim. P. 52(B) errors amount to a powerful indictment of the system. (Sotomayor, J., joined by Roberts, Ch. J., and Kennedy, Ginsberg, Breyer, Kagan, and Gorsuch, JJ.)

The Supreme Court has held that government agents may not, in

their zeal to enforce the law, originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the government may prosecute. Where the government has induced an individual to break the law and the defense of entrapment is at issue, the Supreme Court ruled, the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by government agents. In considering the application of the entrapment defense where acts once legal had been made criminal violations, the Supreme Court noted that evidence of a predisposition to do what once was legal is not, by itself, sufficient to show predisposition to do what was now illegal, for there was a common understanding that most people (i.e. Earnest Gibson III) obey the Law even when they disagree with it.

Federal law independently forbids criminal convictions that rest upon entrapment. <u>United States v. Jimenez Recio</u>, 537 US 270, 154 L.Ed 2d 744, 123 S Ct 819.

The recognition of the defense of entrapment in federal courts was reaffirmed in <u>Sherman v. United States</u> (1958) 356 US 369, 2 L Ed 2d 848, 78 S Ct 819, infra §4[d], where the court cited the decision in <u>Sorrells v. United States</u>, supra, and stated that the intervening years had in no way detracted from the principles underlying that decision. Entrapment, the Supreme Court added occurs only when the criminal conduct in question was the product of the creative activity of law enforcement officials, and a line must be drawn between the trap for the unwary innocent and the trap for the

7.

unwary criminal.  In this regard, the Supreme Court stated, the
accused may examine the conduct of the government agent, and on
the other hand, the accused will be subjected to an appropriate
and searching inquiry into the accused's own conduct and predis-
position as bearing on the claim of innocence.  For example, in
the Petitioner's case the government was unable to convince the
Petitioner to commit a crime.  Therefore, the government was forced
to request a "Deliberate Indifference Jury Instruction."  For example,
"quoting Jacobson and Mayfield," the court said that persistence
by government agents conducting a sting operation is part of an in-
quiry into inducement because the courts are concerned that, if
"additional efforts at persuasion" are required to convince someone
to commit a crime, "then the result will be 'the apprehension of an
otherwise law-abiding citizen who, if left to his own devices,
likely would have never run afoul of the law.'"

     "The point is that the government is supposed to catch crimi-
nals, not create them.  The government's conduct here, including
its persistence, posed an impermissible risk that Barta's criminal-
ity was created rather than caught," the court held.

Chief Judge Diane P. Wood and Judge Richard A. Posner joined the
court's opinion.

III.     18 §1505 "OBSTRUCTION OF JUSTICE"

     "Lack Qualification (i.e. How can you know something kept
secret.)  The Petitioner contends that his Mens Rea demonstrated
that he would not participate in criminal activities (i.e. Medicare

Fraud). Therefore, the government had to secretly create a Medi-
care fraud scheme. However, the government then to utilized the
"Deliberate Indifference" jury instruction to entrap and ascertain
a conviction of the Petitioner.

Incidently, the (9th Cir. 2005) was one of the first Appeal
Courts' (U.S. v. Jewell 9th Cir. 1976) to utilize willful blindness
have since restricted the circumstances under willful blindness
instructions will be issued.

"In the years since we decided Jewell, we have restricted the
circumstances under which we will permit the instruction to be
issued. We have warned that the instruction is "rarely appropri-
ate," and should be given only when the government presents
"specific evidence" that the defendant "(1) actually suspected that
he or she might be involved in criminal activity, (2) deliberately
avoided taking steps to confirm or deny those suspicions, and (3)
did so in order to provide himself or herself with a defense in
the event of prosecution," ... It is not enough that the defendant
"was mistaken, recklessly disregarded the truth or negligently
failed to inquire." ... The instruction should therefore "be rarely
given because of the risk that the jury will convict on a standard
of negligence: that the defendant should have known the conduct
was illegal. "The purpose of the Jewell instrucion is .... for
those cases of "willful blindness," where the defendant "suspects
a fact, realizes its probability, but refrains from obtaining
final confirmation in order to be able to deny knowledge if
apprehended." Consequently, the Petitioner contends that the

government withheld its Highly Secretive Confidential Scheme from the Petitioner to assure his "Entrapment."

Furthermore, for the purpose of "Entrapment" the Petitioner contends that the government secretly highest level confidential investigation with the use of "Deliberate Indifference" Jury Instructions violated his Due Process Rights. Thus, the government violated Earnest Gibson III's Innocent Agent Rights." Accordingly, the Petitioner had no knowledge of the principal "The Government" illegal purpose. Likewise, the government's "Top Secretive PHP scheme denied the Petitioner (i.e. "Innocent Agent"..) the right to demonstrate his Men Rea culpability. Similiarly, since the government's conduct was totally concealed from the Petitioner, he was denied the Right of Actig (a) purposely (intentionally) (b) knowingly, (c) recklessly, or negligently (§2.02(2)). Therefore the Petitioner contends he is Not Guilty (i.e. "Deliberate Indifference"...) of any Criminal Medicare Fraud Statutes or Regulations because Earnest Gibson III did not act with disregard to any of these four types of culpabilities, as the statute requires (§2.02(2)). In addition, the Petitioner contends that the government was keenly aware of his History of Complying with the Laws, Statutes, Rules and Regulations (i.e. See Ex 13 ) Therefore, the government was thereby "Secretly Forced to endanger "Vulnerable Older African Americans to cause entrapment of the Petitioner with its "Deliberate Indifference" "Jury Instructions." In violation of Trial § 298-jury instruction-witness tampering (in 18 U.S.C.S § 1512(b)) (2)(A) or (B).

To constitute fraud on court, fraud must be part of unconscionable plan or scheme, or subvert integerity of court itself; such plan cannot be garden variety fraud—it must rise to level of bribing judge, jury tampering, designing scheme intended to deceive court, or involvement of officer of court in perpetrating fraud; fraudulent act must be intentionally false, wilfully blind to truth, or in reckless disregard for truth. Bowie v. Maddox, 677 F. Supp. 2d 276, 75 Fed. R. Serv. 3d (Callaghan) 938 (DC Dist Col 2010). United States v. Price, 783 F.2d 1132, 113941 (4th Cir. 1986) (new trial required where informant was more than a "mere tipster," having been necessary party to an attempted illegal sale, and defendant wished to present defense of duress or entrapment perpetrated by informant).

## IV. EVIDENCE OF GOVERNMENT DELIBERATE INDIFFERENCE ENTRAPMENT

Accordingly, this 28 U.S.C. § 2255 motion will also inform this court how the government with the highest Level Secret Investigation caused the Petitioner's work for his employer (i.e. Riverside Hospital) to be inferred as false. However, the Petitioner's performance complied with all required statues and regulations. Nevertheless, the government contends that the illegal work conducted on behalf of the government should then be inputed to the Petitioner. Whereas, the government took the initiative of inducing the Petitioner to it's Fraudulent Scheme by assuring that Petitioner would remain "wilfully blind" (i.e. "Deliberate Indifference"). For example, the government was keenly aware that the Petitioner was not Predisposed to Fraud the government.

Although such false evidence should have been inputed to (1)

11.

The Physician, (2) Healthcare Professionals, (3) Personal Care Home
Owners, (4) Medical Staff Executive Committee, (5) The Hospital
Board of Trustees.   Nevertheless, unjustly, <u>all of the government
fraudulent created evidence</u>, was then utilized to wrongfully and un-
justly accuse the Petitioner of being "deliberate indifference."
Therefore, the Petitioner contends that if he was already a
"participant, why create the crime to unjustly accused the Petitio-
ner."  In addition, the government's Highly Secretive Scheme was
an example of the highest level of inhumanity.

   Therefore, no real human being in America  could imagine nor
tolerate such inhumane behavior.  (i.e. "Secret Human Rights Violations")

   Thus, the government had to suborn perjury with evidence ascer-
tained in the Abuse of these "Older Africian American Men and Women."
For example, the government created it's own PHP facility (i.e. PHP's,
"Enslavement of these Vulnerable Americans in their own facility.")
Accordingly, the government maintained exclusive authority over these
vulnerable elderly humans.  Incidentally, it shoud be noted that the
government sponsored "<u>Personal Care Home(s)</u>" were located in a dist-
ance far far from where the Petitioner was employed.  Accordingly,
the government's PHP Dynamic facility was also located in a distance
far from where the Petitioner was employed.

   Thus, if the government was confident that the Petitioner would
participate in it's unlawful scheme, why hide their locations from
the Petitioner.  (i.e. thus "Entrapment")

12.

Thus, the government maintains that the Petitioner was "wilfully blind" (i.e. "deliberate indifference"). However, it was the government who assured that the Petitioner remained in the blind during the investigation, trial, and sentencing. Accordingly, the government cause the Petitioner's truth of complying with the truth, to be flase in the courtroom during his trial. ("Entrapment") Whereas, as previously noted, the Petitioner complied with all the rules, statutes and regulations, he was employed to perform. In addition, the Petitioner implemented a successful compliance program on behalf of his employer. (i.e. See Grand Jury testimony of Syretta Early...). Therefore, the government caused the Petitioner to unknowingly perform and apply legal work to the government's fraudulent scheme. (i.e. "Entrapment"). Accordingly, the government caused the Petitioner to explain to the court and the jury (i.e testimony) how he had attempted to legally perform his duties. However, he had no knowledge of the government's fraudulent scheme. In addition, the government had secretly lied to the court, that the Petitioner had been doing wrong for 30 years. However, what the government failed to tell the court was, ("The Truth") that, the Petitioner, had been doing right for 30 years. (i.e. See Investigation of Earnest Gibson III, Ex 12,13 ) Therefore, such government conduct caused the "injust entrapment" of the leagal responsible work performed by the Petitioner.

To constitute fraud on court, fraud must be part of unconscionable plan or scheme, or subvert integrity of court itself; such plan cannot be garden variety fraud--it must rise to level of bribing

judge, jury tampering, designing scheme intended to deceive court, or involvement of officer of court in perpetrating fraud; fraudulent act must be intentionally false, wilfully blind to truth, or in reckless disregard for truth, Bovie v. Maddox, 677 F. Supp. 2d 276, 75 Fed. R. Serv. 3d (Callaghan) 938 (DC Dist Col 2010). United States v. Price, 783 F.2d 1132, 113941 (4th Cir. 1986) (new trial required where informant was more than a "mere tipster," having been necessary party to an attempted illegal sale, and defendant wished to present defense of duress or entrapment perpetrated by informant.

Accordingly, the government denied the Petitioner any evidence (1) The Secret Locations (PHP(s)), (2) Personal Care Home Owners, (3) "Money to 'Pay' Vulnerable Older Patients, (4) Access to Secret Patients, (5) Knowledge of the Highly Secretive Staff (i.e. Confidential Human Sources, the Highest Human Secret Sources for the Government, Informants etc...), (6) False Information Provided to Physicians and Health Care Staff, (7) Falsefied Audits By Government. However, after Secretly withholding all such evidence during the investigation the government unjustly accused the Petitioner as being "Deliberate Indifference."

Consequently, the government caused what was supposed to be actual factful "Legal Work" to be false as a result of government created "Probative Evidence," thereby assuring a false entrapment of the Petitioner. Whereas, the government caused false evidence to be presented to the court. Accordingly, the government, (1) Created

14.

the Hospital's false PHP scheme, (2) Ascertained the funds, (3) Executed the conspiracy, (4) Provided the staff, and (5) Falsified the records.

For example, "The court reversed the conviction as noted that evidence needed show only that the government agent initiated the payment." (U.S. Court of Appeals for Second Circuit (431 F.2d 830; 1970 U.S. App. Lexis 7468).

It should be noted that all such violations occured by the government after the Petitioner had retained legal counsel. In fact, the government had meeting(s) with the Petitioner's Counsel on multiple occassions knowing that the Petitioner had already retained legal representation.

The Petitioner on multiple occassions resisted the government's repeated attempts to coerce Earnest Gibson III to violate the law. (i.e. Pay for Patients).

Therefore, the government violated the Petitioner's "Home" to voluntary act ("Mens Rea") that violates statutes and regulations prohibited by law (i.e. Paying Patients to Attend PHP's etc...).

However, the Petitioner "just like the public" expected the "Government" to "Protect" all "Human Beings" Constitutional Rights (i.e. including Elderly Mental Health Patients entitlement to medical and Psychiatric care). For example, the Supreme Court reversed "Jencks v. United States, whereas, the government failed to produce secret "F.B.I. Reports." Whereas, the Supreme Court ruled "if the govern-

15.

ment exercised its privilige to withhold reports in the public inter-
est, 'the criminal action must be dismissed.' For example, as noted
in the Supreme Court."

"CLASSIFIED TO U.S. SUPREME COURT DIGEST, LAWERS EDITION"

Discovery and Inspection § 13-Accused Right To Production Of
Documents In Government's Possession.

(1) Even though no preliminary foundation of inconsistency be-
tween the trial testimony of government witnesses and reports in pos-
session of the government containing statements made by these witnes-
ses is laid, the defendant in a criminal case is entitled to produc-
tion of these reports for his inspection where a sufficient founda-
tion is established by the testimony of the witnesses that their re-
ports were of the events and activities related in their testimony

Discovery and Inspection § 13- Of Documents In Government's
Possession Prerequisities.

(2) The neccessary essentials of a foundation for an accused's
right to production for inspection of documents in the government's
possession are that his demand is for production of specific documents
containing statements taken from persons of informants offered by the
government as witnesses at the trial, and not for any fishing exped-
ition of the chance that something impeaching the testimony of the
testimony of the witnesses may turn up; for production purposes it

need only appear that the evidence is relevant, competent, and outside of any exculsionary rule.

The Supreme Court ruled that the United States' trial system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and "not by any outside influence," whether of private talk or public print. (i.e. Not Secret Confidential Invsetigation...)

Consequently, in the Petitioner's case the government denied the Petitioner all of the following evidence (1) The secret locations of the PHP's, (2) Locations and names of government secret personal care homes, (3) The names of the personal care owners, (4) The name of each elderly patient forced to attend the PHP, (5) Amount of money paid to each patient, (6) All incentive evidence paid by the government, (7) Names and identity of all of the government's highly secretive staff, (8) False information provided to Physician and Healthcare Professionals, (9) Falsified audits provided by the government.

However, after secretly withholding all such "Evidence" during the investigation, pretrial, during trial, and sentencing, the government unjustly caused the Entrapment of the Petitioner with the "Deliberate Indifference," charge.

THEREFORE, ultimately, the government's highly secretive confidential scheme violated the principle of Mens Rea when it extends a cloak over the actual innocent (i.e Petitioner) and violated the preservation of liberty in the Petitioner's case.  Accordingly, the government's highest level confidential schemed accomplished it's

17.

Goal. The government Denied Petitioner any knowledge of it's highly secretive scheme. Consequently, the government's secret behavior assured that Petitioner was oblivious of risk in the PHP(s). Thus, the government assured it's Goal, "Entrapment with Deliberate Indifference charge of the Petitioner."

In addition, Petitioner hereby requests the government to justify its decision to hold the Petitioner "Deliberate Indifference" when according to statute § 424.27 requirement "The Physician, Nurse Parctitioner, Clinical Nurse Specialist, or Physician Assistant who reviews the PHP Plan must recertify the plan by signing the medical record. Thus, accordingly, by law all such complaint(s) are then forwarded to either (1) Chief of Medical Staff, (2) Executive Staff Medical Board, (3) Board of Trustees.

However, "None of the eight (8 etc...) indentified were charged nor hled with 'Deliberate Indifference.'" For example, no individual directly responsible for the Patient(s) accused the Petitioner of being "Deliberate Indifference."

As reported in the Petitioner's initial § 2255 motion his case according to the ruling of this Honorable Court is complex. Thus, the Petitioner contends that the secret unlawful abuse by the government enhanced the complexity in the Petitioner's case. Therefore, the Petitioner contends that such highly secretive confidential conduct on behalf of the government and all of its coconspirators enhanced the violations of his Due Process and Constitutional Rights.

18.

Accordingly, the government's secret and confidential misuse of scientific understanding of the human brain and mental illness to force the Patients, Physicians, and Healthcare Professionals to undergo treatment is shocking to the very core of humanity. For example, what is more shocking is the fact the government withheld the evidence from the Petitioner to assure a deliberate indifference conviction (i.e. "Entrapment"). In addition to assure its unjust conviction the government interferred with the Petitioner's access to funds for legal defense (i.e. Attorney's Dick DeGuerin, Katharine Bean...). Thus, the denial of such legal defense funds denied access to (1) Adequate Investigation Staff, (2) Adequate Evidential Defense Materials, (3) Experts in Mental Health that could have assisted in the Investigation of the Government Complex Created Secret Conspiracy Scheme. Consequently, the government's denial of the Petitioner's Legal Funds assured that his Attorney(s) would not have the (1) Funds, (2) Resources, and (3) Materials to Establish an Effective Defense on Behalf of the Petitioner.

The government ignored the substantial medical, ethical and human rights of the elderly (i.e. Older, Vulneralbe, African Americans...). Therefore, secretly, the government demonstrated its lack of compliance with the laws of the State, Federal Statutes and Regulations. The government's highly secretive confidential scheme in the Petitioner's case was the foundation of absolute disregard for the Intrinsic value of human life for these vulnerable, older, African American men and woman and the Due Process and Constitutional Rights of the Petitioner.

19.

Accordingly, the Petitioner contends as reported in his initial § 2255 motion the government made multiple attempts to trap him (i.e. see Multiple attempts to cntact Petitioner by Cherly Witlow, FBI infromant Ex ___19___ and IRS Khrief's investigation attempts. Whereas, excerpts from the Petitioner's unlawful contacts were utilized during trial. In addition, as noted by Petitioner's Attorney Dick DeGuerin, these statements clearly violated the Petitioner's Sixth and Fourteenth Constitutional Rights. See e.g., <u>United States v. Henry</u>, 447 U.S. 264, 65 L. Ed. 115, 100 S. Ct. 2183 (1980), <u>Brewer v. Willams</u>, 430 U.S. 387, 51 L. Ed. 424, 97 S. Ct. 1232 (1972); <u>Massiah v. United States</u>, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964).

Whereas, the Petitioner contends that the government, with Highly Secretive and Confidential Proximate Evidence casued the violation [42 §§ 1397 "Elder Justice..."]. However, "<u>The Government unjustly with its violation of Criminal-Instrumentality Rule</u> falsey accused the Petitioner of [42 §§ 1397 (A)(B), "Illegal Renumerations ..."]. Accordingly, the Petitioner was an Employer of the corporation (i.e. Riverside Hospital...). The Petitioner did not use his position to unjustly enrich himself.

§ 0.735-18 General conduct prejudicial to the Government. They are expected to conduct themselves in a manner which will reflect favorably upon their employer. Although the Government is not particularly interested in the private lives of its employees, it does expect them to be honest, reliable, trustworthy, and of good character and reputation. They are expected to be loyal to the Government, and to the department or agency in which they are employed.

(b) Specific policy.  An employee shall not engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, or other conduct prejudicial to the Government.

(c) Regulations applicable to public buildings and grounds.  Each employee is responsible for knowing and complying with regulations of the General Services Administration and of the Department of Commerce applicable buildings and grounds.

§ 0.735-19 Reporting undue influence to superiors. It should be noted that the Petitioner did not recieve such notification from any Governmental Source.

Thus to assure an unjust conviction of the Petitioner's Emplyee Rights the Government also caused the violation of § 240.106-5 Employment of Manipulative and Deceptive Devices.  Accordingly, the Government unlawfully directly and indirectly with its Highly Secretive and Confidential Scheme utilized instrumentality of interstate commerce or U.S. Mail in viloation of the Social Security Act. Whereas the Government employeed the Secret Confidential Scheme of paying patients to attend PHP Psychriatic Treatment.  However, such coerced false statements to the Physicians and other Healthcare Professionals to engage unknowingly in Fraud and deciet upon the Medicare Program and the Petitioner.  Therefore, the Government, with Confidential Secret Information caused the violation of the Petitioner's Employee Safe Harbor Protection.  For example, the Petitioner an employee, was not informed "During the Investigation, Trial, nor during Sentencing, that the Government had engaged in such "Employment of Manipulative and Deceptive Devices."  Although

the Government Falsey lead the jury to believe that the Petitioner was responsible for such Government Created Fraud when he signed "The Medicare Compliance Agreement" on behalf of the Corporation. (i.e Not For His Benefit...).

Thus, it was the Government that caused the Fraud and Deceit in violation of the Petitioner's Equal Opportunity Right to comply with § 56.9 <u>Ensuring Compliance with this Part of Federal Financial Assistance Programs and Activities</u>.

However, the Petitioner contends that from the beginning of its Highly Secretive Confidential Investigation he was an Employee for Riverside General Hospital. The Petitioner was employed as the CEO/President by Hospital Board of Directors. Therefore, the contention that the Petitioner shall be held Responsible for conduct of his Superiors (i.e. Board of Directors...) as the employer of the corporation and the Executive Board of the Medical staff and Chief of the Medical Staff was certainly an "Example of Miscarriage of Justice," on behalf of the Government. Accordingly, the Petitioner contends that all of his duties complied with § 404.1007 <u>Common Law Employee</u> status.

(b) Factors that show employee status. Some aspects of a job arrangement that may show you are an employee are as follows:

(1) The person you work for may fire you.

(2) The person you work for furnishes you with tools or equipment and a place to work.

(3) You receive training from the person you work for or are required to follow that person's instructions.

(4) You must do the work yourself.

(5) You do not hire, supervise, or pay assistants (unless you are employed as a foreman, manager, or supervisor).

(6) The person you work for sets your hours of work, requires you to work full-time, or restricts you from doing work for others.

(7) The person you work for pays your business or training expences.

(8) You are paid by the hour, week , or month.

However, the Government during the Petitioner's trial "Contented Falsey" that the Petitioner was the Owner and he was responsible for the conduct of the Medical Staff and other related Healthcare Professional(s) (i.e Physican Assistants, Nurse Practioner, Master Level Social Workers etc...). The Principal Officer for the corporation is its Governing Board of Directors or <u>Board of Trustees</u>. The Medical Staff reports directly to the Chief of Specific Division within the hospital. For example, a patient medical complaint will be forwarded to Chief of that Division (i.e. Chief of Psychiatrics Division). Subsequently, all such complaints are then forwarded to Medical Staff Executive Board, then all unresolved and resolved issues are forwarded to the Board of Directors for resolution in compliance with state law(s) and compliance with the state of Texas Medical Board.

23.

The Petitioner (i.e. an Employee) has no authority to oversee the responsibilities and duties of the Physicans and Healthcare Professionals that are under the supervision of the Physicians. (See Ganji...) In addition, ultimately all such Final Authority resided with the Petitioner's Corporate Board of Directors.

Consequently, the Petitioner contends that the Government violated § 56.9 Ensuring Compliance With This Part Of Federal Financial Assistance Programs And Activities. Whereas the Government confidentially and secretly during the investigation of the Petitioner caused  violated section of section (e).  Therefore, with "Money" the Government caused intimidation and interference with Vulnerable Older African American Men and Women's Right to Psychriatic Medical Treatment.  Accordingly, the paying of these patients by the Government assured that these Elderly Vulnerable African Americans (i.e.Patients) would not retaliate against the Government during the Investigation by "Filing a Complaint."

The Petitioner contends that the Psychiatrists are ultimately responsible for any patient whom are attending the PHP.  For example, in O'Neill v. Grayson County War Memorial Hospital, (1973 CA 6 Ky) 472 F.2d 1140 were properly dismissed by the Board of Directors.  Whereas, Physician's action against hospital's Board of Directors, alleging denial of due process and equal protection by hospital's action in discharging physician from hospital staff and refusing to accept any of his patient for admittance, held properly dismissed in view of fact that statute affords relief only where incidious discrimination is class-based, and where physician's

24.

complaint merely asserted that standards applied to him, individually, in his dismissal were purposefully different from standards applied to other physicians on hospital's staff. However the Petitioner contends that the Government caused him "The Employee," not the BOT, nor the Physician be held responsible for False Evidence provided by patients that the Government forced them to Falsify. In addition, the Petitioner contends the hospital employees provided services that the Government through these Vulnerable Older African American patients were inhumanely forced to personally verify. Therefore, the Petitioner contends that the Petitioner should not be liable for services that were received that both Patient and Physician Verified that were needed. (See Ganji)

V.     GOVERNMENT'S DIRECT ENTRAPMENT ATTEMPTS

Thus, to assure a Wrongful Conviction of the Petitioner an Employee, the Government violated his Fifth, Sixth and Fourteenth Amendment Rights. Whereas the Supreme Court has ruled that "the clear rule of Massiah is that once adversarial proceedings have commenced against an individual, he has the right to legal counsel when the Government interrogates him." Brewer v. Williams, 430 U.S. 387, 398 (1977). Quoting Kirby v. Illinois, 406 U.S. 682 (1972). In Brewer, 430 U.S. w 399; Justice Stewart who delivered the opinion of the court; went on to state that "the clear rule of Massiah is that once adversarial proceedings have commenced against, an individual, he has the right to legal counsel representation when the Government interrogates him." In Henry 447 U.S. at 271 the court found that "conversation stimulated in circumstances may elicit

information that the accused would not intentionally reveal."
"And that by intentionally creating a situation likely to induce
Henry to make incriminating statements without the assistance of
counsel; that the Government violated Henry's Sixth Amendment Right
to counsel.

"The admissions of a defendant come from the actor himself,
the most knowledgeable and unimpeachable source of imformation about
his past conduct. Certainly, confessions have profound impact on
the jury, so much so that we may justifiably doubt its ability to
put them out of mind even if told to do so." (Bruton v. United
States, 391 at 139-140, 20 L Ed. 2d 476, 88 S. Ct. 1620 (White,
J, dissenting)).

For example, as presented in the Petitioner's initial petition
unlawful interrogation and attempt of entrapment by the Government.
Thus utilizing multiple ill gotten incriminating untrue statements.
"Accordingly in violation of the Petitioner's Sixth and Fourteenth
Amendment Rights. Subsequently these false statements were utili-
zed falsely in trial to prejudice the court and jury. Thus violating
the Petitioner's rights to Due Process and a Fair and Just Trial.
(See Affidavit 19 ). Agent Khirier acknowledged that she did not
tell the Petitioner about PHP investigation(s) that were underway.
(pg 235) Agent Khirier talked to the Petitioner about multiple
things. (pg 246) Thus agent Khirier stated, "I am not required to
inform witness or targets." (pg 246) Thus agent Khirier violated
the Petitioner's Constitutional Right to Counsel. (U.S. v.
Kennedy, 372 & 3d 686, 693 4th Cir. 2004). Accordingly, the Govern-

26.

ment intentionally created a situation likely to induce the defen-
dant to make incriminating statements Without the assistance of
counsel.  For example, agent Khirier "Falsely" stated to the Jury
that Petitioner stated that he (i.e. Petitioner the "Employee")
actually owned the hospital.

## VI. GOVERNTMENT, KAHN, BULLOCK, FUGERSON, CLARK, ASKEW,  PRESENTATION OF FRAUDULENT DOCUMENTS

Whereas, the Government "Highly Secretive Confidential Scheme"
included secretly participating, causing and allowing the Petitioner
with "Deliberat Indifference" for his Corporation purchasing a business that the
Government, Kahn, Bullock, Fugerson, Askew, Clark and all of the
other Secret Conspirators was participant.  However, the Government
then knowingly caused the Coconspirators and Petitioner to be charged
as a coconspirator with Bullock and Clark and others for their theft
of Hospital property and charge the Petitioner as a coconspirator.

For example, Leslie Clark, William Bullock and Cynthia Bullock,
William Bullock's wife, created the name Oasis Outreach to default
Riverside Hospital.  According to the FBI report both Leslie Clark
and William Bullock were addicted to drugs and were known drug add-
icts.  There were no outreach activities, there were no personal
care homes nor was there a boarding house owned by Oasis.  Leslie
Clark served as an Administrative Billing Specialists at Dynamic
and Caroline.  Contrary to her testimony to the Jury she worked as
Billing Specialist until June 6th , 2011.  Leslie Clark and William
Bullock did not recruit patients for Oasis.  They created false
patient lists to bill from.  Some of these patients were admitted

to Dynamic before Oasis ever existed. (See RGH.0773) Some of these alleged patients were NEVER at Dynamic PHP or Caroline PHP. Patients NEVER lived at Oasis.

IN COURT Ms. Clark stated that her patients (1-23-12) are sitting at home waiting to be admitted so that she could receive more fraudulent funds from Riverside Hospital.

| David Aleman | Discharged | 5-23-11 |
| Barbara Provazak | Discharged | 6-8-11 |
| Clayton Podgett | Discharged | 6-15-11 |
| Kat Coleman | Discharged | 5-19-11 |
| Matthew Lambert | Discharged | 10-7-11 |
| Flodine Smallwod | Discharged | 5-31-11 |
| James Stokes | Discharged | 10-28-11 |
| Alasia Smith | Never Admitted | |
| Ayinde ATU Richmond | Never Admitted | |

Ms. Clark and Mr. Bullock also falsely placed the following patient on the Oasis list. It should be noted that these patients existed before Oasis was in existence.

| Flodine Smallwood | Admitted | 7-20-10 |
| James Stokes | Admitted | 11-04-09 |
| Henry Williams | Admitted | 11-08-10 |
| Emmett Schuker | Admitted | 11-08-10 |

There was NEVER an Oasis Boarding House and or Rental House. Leslie Clark and William Bullock created the fraudulent Oasis Outreach list so that they could continue to receive payment for patients that either did not exist, were not admitted, or that were never billed on. Ms Clark made the list of patient(s) who attended or had

attended Dynamic and put them on the Oasis Outreach List.  Ms.
Clark stated that one client(s) did not attend the program because
of transportation problems (i.e. no ride).

Leslie Clark not only and Bullock not only made up this fic-
titious and fraudulent list as a ./biller in her transcript, she
stated that Khan fired her.  The reason he fired her is because he
caught her stealing.  As an Administrative Billing Specialist em-
ployee she was verifying her own falsified list of patients.  Ms.
Clark stated that her patients were sitting at home waiting to be
admitted. (2010...discharged in 2011).  Moreover, patients were not
sitting at home as Ms. Clark stated in court they had been dischar-
ged from the Program.

Patients admitted to Dynamic PHP before Riverside's purchase.
Riverside Hospital was fraudulently consistently billed for mark-
eting however; the patients were admitted prior to the purchase.
It should be noted that Riverside was consistently billed and no
work was done.  See GOV. Exhibit 318 and 319.  Dynamic DID NOT
EXIST in 1/16/2006 (examples of patient just placed on list)
There was No evidence that any patients came from the home.
Likewise as previously noted Oasis Outreach created fraudulent
bills to Riverside Hospital.

LESLIE CLARK Transcript 09/24/2014

09:16:24 lines 9-10 "Oasis was the entity that I created so that
I could get paid for patients under the name of Oasis"
09:13:35 lines 10-12 "What do you mean Aleman?"

He was one of Oasis patients. He was one of the patients I was
paid for. He was one of the patients I was paid for. Newly Disco-
vered Evidence shows us that Oasis Outreach was created April 30,
2011.                    Accordingly to Government Exhibit 303 [Sum-
mary of PHP Medicare Claims from RGH for January 2005 through June
2012]. Aleman was admitted in March 7, 2011. This shows that
Aleman was a pre-existing patient in Dynamic's PHP before Oasis Out-
reach even existed. Not only did Ms. Clark commit perjury to the
Court, but she also lied, cheated and stole from Riverside Hospital
by submitting false and fraudulent claims to Riverside. Ms. Clark
lied and used her authority of Administrative Billing Specialist
in order to submit false claims for her and William Bullock's
own personal benefit. As previously noted, Kahn fired Ms. Clark.

She was aware that William Bullock, her co-conspirator and
business partner, created false Check Request forms and submitted
those false forms in order to continue to support their continued
drug habit.

11:48:48 lines 13-16 Clark stated that the 13 people from the
Oasis Outreach list "did attend" Mr. kahn's PHP and that she was the
mione responsible for bringing them there. Newly Discovered Evidence
shows that these patients were already admitted to Dynamic PHP
before Oasis Outreach even existed. SEE EXHIBIT 9

Clark was NOT hired to do Outreach for Riverside Hospital;
she was hired as a Billing Specialist Administrator. While Leslie
Clark claimed that she was out doing outreach, she was actually
doing billing as a contractor for Riverside. Again, this is more

falsification of Clark claiming that she was doing outreach.  Instead, she was submitting flase patient names for Oasis Outreach for she and William Bullock's own personal gain. (Bullock was one of the owners of Dynamic).

09:16:24 Lines 9-10 ms Clark stated that Oasis was the entity that she created so that she could get paid for patients.

Therefore, the Government was allowed to charge the Petitioner as a Coconspirator with Bullock and Clark.  However, the Government knowingly allowed Clark to present fake evidence to the Jury.  However, the Government did not present no evidence relative Bulliard. The Government did not present "no patients for marketing nor marketing checks on behalf of Riverside." Whereas, during deliberations the jury asked the court "could they seperate the conspiracy with Bullock and Clark?"

Whereas, the Petitioner further contends that BOT'S duties and responsibilities are inherriant exclusively in Riverside Hospital's BOT and State Law(s) is clearly illistrated in Sukle v. Madison General Hospital, case.

Private, nonprofit hospital, by virtue of its articles of incorporation, bylaws, customs and usages, contracts, and sources of funds, held to be so interrelated with city government that its actions in terminating physician's staff privileges were actions performed under color of state law; deprivation of membership on hospital's staff and termination of physician's privileges thereon constitute deprivation of physisian's liberty and property within meaning of due process clause, requiring some minimal procedural

protections; however, Constitution does not require that decision-making process under which renewal of staff rights is made be as antiseptic in this context as it is required to be in criminal prosecutions.  Suckle v. Madison General Hospital (1973, WD Wis) 362 F.Supp 1196, affd (1974, CA7 Wis) 499 F.2d 1364.

     "Incidentally the Board of Directors Responsibilities and Authority can also be illustrated in Barrio v. McDonough Hospital Case."

    "Suspension of physician from staff of state-regulated private hospital by action of Board of Directors is not "conspiracy to de-prive person or class of persons of equal protection of the laws" under 42 USCS § 19853(3) absent showing of existence of "class-oriented, invidious animus" against plaintiff rather than animosity against him as individual.  Barrio v. McDonough Dist. Hospital, (1974), SD Ill) 377 F.Supp 317."

VII.     INEFFECTIVE ASSISTANCE OF COUNSEL

    Thus, the Petitioner also contends that his attorney was ineffective for not providing evidence of his Employee Rights.  The Petitioner contends his responsibilities and authority as an Em-ployee of the corporation would have provided factual evidence the conduct and authority that the Government contends was the Petitio-ner's was clearly vested in his superior "The Board of Trustees" (i.e BOT bylaws).,  In addition, the Petitioner's attorney failed to produce his employment contract nor any annual performance evaluations.  Both would have assisted in providing evidence that

the Petitioner consistantly performed his employment duties and responsibilities. <u>Thereby, assuring the court and the jury the Petitioner should not have been charged for a Government proximate crime he had no knowledge, authority or responsibility to oversee.</u> Accordingly, also such authority was vested in his Superior "The Corporate Board of Trustees." <u>Thus, the Petitioner strongly suggests that the Non Action of his counsel, "Employee Status" was prejudicial to his right to effective assistance of counsel under the Sixth Amendment.</u>

During the Petitioner's trial the Government contended that the Petitioner was Deliberate Indifference. In addition, the Government contended that the Petitioner "the Alleged Owner" was heavily involved in Devotion (i.e. PHP Private Contractor Business with Riverside...).. However, excerts from the investigation conducted by Epstein, Becker and Green Law Firm, on behalf of Riverside Hospital Board of Directors clearly " <u>Reveal the Truth</u>." (See EBG Investigation Ex. 18)          Accordingly, EBG Investigation revealed that Petitioner was not involved in Devotion and Riverside contract relationship. In addition, the investigation also revealed that Devotion complied with contract obligation to Riverside Hospital and Medicare Regulations. In addition, the investigation demonstrated that all of the compliance relative to the interactions between Devotion, was performed by the Chairman of Riverside BOT, Compliance Officers, and Administrative Staff.

Incidentially please see (i.e. Epstein, Becker and Green Investigation Report pg____). Reference to the fact that known pat-

ients in Kahn's own program being secretly provided care in River-
side PHP Outpatient Facility. Also, see Kahn's Medicare operation
scheme pg  6  . However, Riverside Hospital paid for services that
Kahn secretly billed by utilizing his own (See Kahn Pin # )
However, Kahn secretly received the funding from Medicare just like
the funding Kahn received for ser vices that Riverside Labortory
employee(s) provided (i.e. see pg____).

However, the Petitioner contends that his attorney(s) failure
(1) To investigate Kahn's participation in his own scheme, (2)
Secure all Government Kahn related evidence, (3) Failure to
interview Kahn prior to trial is evidence of Ineffective Assistance
of Counsel (i.e. Strickland v. Washington, 466 U.S. 686, 104 S. Ct.
2052, 80 L. Ed. 2d 674 (1984).

Thus, the Petitioner contends that the Government violated U.S.C.
42 § 12101. Whereas, Congress finds that _ _ (1) Physical or Mental
disabilities in now way diminish a person's right to fully participate
in all aspects of society, yet many people with physical or mental
disabilities have been precluded from doing so because of discrimina-
tion; Others who have a record  a disability or are regarded as having
a disability also have been subjected to discrimination. _ _ _ (i.e.,
including (2), (3), (4), (5), (6), (7), (8),)(i.e., See U.S.C.
42 § 12101...) In addition, the Government violated the purpose
(i.e., (1), (2), (3)_ _). Similiarly, according to U.S.C. 42 §
12101b(4) Congress invoked the sweep of Congressional Authority,
including the power to enforce the Fourteenth Amendment and to regu-
late,,in order to address areas of discrimination faced day-to-day

34.

by people with disabilities, (i.e., See U.S.C. 42 § 12101.).

Moreover, the Government confesses that it forced Vulnerable, Older, African Americans to undergo Psychriatic, Mental Health and Substance Abuse Treatment(s).

Whereas, the Government then falsely created the need for § 5122 Emergency Act. Thus, with federal assistance the Government created "Proimate Evidence" to supplement falsified State and local efforts and capabilities to save lives and to protect property and public health and safety, or to lessen or avert the threat of a catastrophe in any part of the United States. Therefore, with the highest level of secrecy and confidential human resources etc... (CHS etc...). The Government(s), Federal, State, City, County, created the crime. However, although knowing that the Petitioner had already retained legal counsel, the Government on multiple occasions attempted to Entrap the Petitioner (i.e., The Employee).

Moreover, when the Unlawful Multiple Attempts failed, the Government falsely accused the Petitioner with "Deliberate Indifference." Accordingly, the Government violated U.S.C. 18 § 1954 by offering the Patients "Money to influence the operations of the Employee benefit plan. In addition, the Government secretly violated U.S.C.S. § 664 <u>Theft or Embezzlement From Employee Benefit Plan</u>.

35.

However, the Government then flasely accused the Petitioner
for acceptance of his Bona Fide salary for services actually per-
formed in his duties as employee (i.e., Administrator) by being
Deliberate Indifference to the Governments Highly Confidential
Fraudulent Secretive Scheme.  Therefore, the Petitioner, the Emplo-
yee for the Corporation (i.e., Riverside Hospital..)  Rights to
§ 184- Strict Construction of the Laws Creating Crimes was viol-
ated.  Accordingly, the Government held the Petitioner (i.e.,
Earnest Gibson III), the Employee, Legally Responsible for Authority
"Clearly Vested in Superiors (i.e., Board of Trustees) and Execut-
ive Committee or Riverside Medical Staff.

However, such misuse of statute(s) by the "Government creating
flase crimes"  "ARE TO STRICTLY BE CONSTRUED IN FAVOR OF THE ACCUSED
AND MAY NOT BE HELD TO EXTEND TO CASES NOT COVERED BY THE WORDS
USED."  Similarly the Petitioner was Employed by Riverside General
Hospital (i.e., RGH). RGH was a 501(c)(3) Nonprofit Hospital.  How-
ever, according to 42 § 12501 Congress finds Nonprofit Organizations
are already supporting a variety of National Service Programs that
deliver needed service in a cost - effective manner.

Therefore, the Petitioner an Employee for Riverside Hospital
was one of those Nonprofit Corporations that was providing such
needed services in a cost-effective Legal manner.  Consequently,
the Government was forced with Highly Secretive Confidential Sour-
ces to create proximate evidence to unfairly convict the Petitioner
an "Employee" of the Corporation for duties and responsibilities
he was not Employed to perform.

The Petitioner contends that his case is "A Clear Evidence of injustice." For example, after the Petitioner's trial the government acknowledged that with the highest Level of Secrecy it had violated the very Law(s) it had sworn to uphold. However, the Petitioner only discovered the government acknowledgment of its own conspiracy on approx 2017. Whereas, on this date the Petitioner was reviewing his PSI and discovered that the evidence had been placed in his PSI. In addition, the Petitioner contends that during (1) Pretrial Hearing, (2) Trial Proceeding, (3) Sentencing the Government never acknowlege its involvement in the creation of the crime against the Petitioner. In addition the Petitioner was never informed by his attorney (i.e. Dick Deguernin) that he had any knowledge nor evidence of the government's highly secretive confidential scheme. Therefore the Petitioner was Denied that Evidence to properly defend the Petitioner. Accordingly, the Government secretly "owned-maintained Personal Care Home Facilities." Therefore, the government's secretly involvement of maintaining these Personal Care Home(s) would assist in its conspiracy scheme. Therefore, the government maintaining control of these facilities for the Vulnerable Elderly Older African American Men and Women was to assure the violation of the "Elderly and Petitioner's," Constitutional and Due Process Rights.

Consequently, the government caused the violation of these Elderly Vulnerable Humans and the Petitioner's Constitutional Rights (i.e. I Amendment, XIII, and IVX Amendment Rights...). Moreover, the government caused the violation of these Older Vulnerable African American Men and Women who lived in these facilities Rights to None (1) Interference, (2) Coercion, (3) Discrimination or (4) Reprisal

37.

from the facility owner or government (i.e. Federal or State etc...). Furthermore, the Petitioner contends the Government violated § 483.10 Resident Rights.

(a) Resident Rights. The resident has a right to a dignified existence, self-determination, and communication with and access to persons and services inside and outside the facility, including those specified in this section.

(1) A facility must treat each resident with respect and dignity and care for each resident in a manner and in an environment that promotes maintenance or enhancement of his or her quality of life, recognizing each resident's individuality. The facility must protect and promote the rights of the resident.

(2) The facility must provide equal access to quality care regardless of diagnosis, severity of condition, or payment source. A facility must establish and maintain identical policies and practices regarding transfer, discharge, and the provision of services under the State plan for all residents regardless of payment source.

(b) Exercise of rights. The resident has the right to exercise his or her rights as a resident of the facility and as a citizen or resident of the United States.

(1) The facility must ensure that the resident can exercise his or her rights without interference, coercion, discrimination, or reprisal from the facility.

(2) The resident has the right to be free of interference,

38.

coercion, discrimination, and reprisal from the facility in exercising his or her rights and to be supported by the facility in the exercise of his or her rights as required under this subpart.

Incidentally, the Petitioner contends that access to the evidence of the violation and all of the above rights of the Petitioner were violated. Whereas, all such Secret Exculpatory Evidence Remained Secret During All of Petitioner's Proceedings.

## VIII. RECENT FIFTH CIRCUIT APPEAL COURT RULING(S) APPLICABLE TO PETITIONER'S CASE

Whereas, the Petitioner contends that his case is a replicate of the Fifth Circuit United States of America, Plaintiff-Appellee v. Doctor Pramela Ganji; Elaine Davis: Jan 30th 2018. For example, in Dr. Pramela Ganji and Elaine Davis's case the defendants convictions for violating 18 U.S.C. §§ 1349 and 1347 were Reversed and Vacated since the Government's concerted action evidence fell well short of the threshold met in Arredondo-Morales and the Grant dicisions, and a defendant could not be held liable for fraud as a result of activity that was legal. "However, it should be noted that in the Petitioner's case the Government's concerted effort was the actual cause (Proximate Evidence of the Crime). But the misapplication of physician duties and responsibilities were the same.

Furthermore, Dr. Ganji provided testimony of her innocence that went unanswered by the Government. Dr. Ganji's extensive, undisputed testimony differentiated her forty-year practice from Dr. Murray's. The Government presented evidence that Dr. Ganji

rarely personally visited the patients she certified. In response, Dr. Ganji, who cared for patients in her private practice, at nursing homes, and at other home health care agencies, testified that nurse practioners conducted the visits when she could not. When asked if she "believed that his face-to-face encounter with the nurse practioner was permissible, Dr. Ganji answered, "Yes." This statement was not rebutted by the Government and this practice is allowed by the regulations. <u>42 C.F.R. 424.22.9</u>.

Accordingly, the Petitioner contends that in his case, just like Dr. Ganji and Davis, Riverside General Hospital and its Medical Staff provided PHP services as required by federal regulations (<u>42 C.F.R. § 410.27</u>), Theraputic Outpatient hospital of CAH Services and supplies incident to a physician or non-physician practitioner's service: Conditions. Which States: "(2)(iv)(E) <u>For nonsurgical extended duration theraputic services</u> (extended duration services), which are hospital or CAH outpatient theraputic services that can last a significant period of time, have a substantial monitoring component that is typically performed by auxiliary personnel, have a low risk of requiring the physician's or appropriate nonphysician practitioner's immediate availability after initation of the service, and are not primarily surgical in notion, <u>Medicare requires a minimum of direct supervision during the initation of services which maybe followed by general supervision at the discretion of the supervising physician or the appropriate nonphysician practitioner</u>. Initiation means the beginning portion of the nonsurgical extended duration theraputic services which ends when the patient is stable and the supervising physician <u>or the remainder of the service can</u>

be delivered safely under general supervision." Thus, the Petitioner
contends just like in Dr. Ganji's case his PHP facilities complied
with the Physician(s) Requirements.

For example, the Petitioner contends that he was an employee
for Riverside Hospital. In addition, he reported to his supervisors,
the Board of Trustees. Whereas, the Hospital maintained a medical
staff that also reported to Board of Trustees. For example, Davis
an owner was in superior position to provide consipiracy.

Thus, to prove conspiracy, the Government must prove beyond
a reasonable doubt the defendant knew of and participated in an
agreement to commit a crime. It is not enough that the Government
proves that the defendant knew something criminal was afoot.
Alvarez, 610 F.2d at 1257. The Government presented evidence that
Davis was an accountant and Christian's owner, and her duties
included signing checks and filling staffing positions. It argued
that, as such, Davis had significant oversight at Christian and the
jury rightfully rejected her argument that she was unaware of any
fraudulent certifications. In essence, the Government argued that
the jury could infer that Davis had knowledge of the fraudulent
activity and agreed to participate because one in that position
should have known that some of Christian's nurses recruited and
some of its medical directors certified patients who were not eli-
gible for home health care services. Notably, the Government offers
no case support for its argument.

The Government's attempt to ascribe Davis with knowledge and
agreement because of her position in the company falls far short of
the necessary requirement for guilt beyond a reasonable doubt. One

41.

cannot negligently enter into a conspiracy.   See <u>Snow Ingredients,</u>
<u>Inc. v. SnoWizzard, Inc.</u>, 833 F.3d 512, 526 (5th Cir. 2016) ("Civil-
RICO conspiracy, however, cannot be premised on negligence.  It
requires an actual agreement between conspirators-they must spec-
ifically intend the illegal conduct.");  see also <u>Model Penal Code</u>
<u>§ 5.03 cmt. 2(c)(i)(1985)</u> ("When recklessness or negligence suffices
for the actor's culpability with respect to a result element of a
substantive crime...there could not be a conspiracy to commit that
crime.").

Furthermore, Davis testified that she did not have any medical
training, was not qualified to make diagnoses, and depended on
Christian's medical professionals "one hundred percent" in medical
matters.  She further testified that "the administrative office...
confirmed the patients Ms. Hendricks and Ms. Clestine had brought
in."  The Government did not provide evidence refuting the testimony
that Davis had little involvement in Christian's administrative
matters and no involvement in its medical matters.  It instead con-
tinously pointed to Davis's payroll participation to illustrate her
oversight at Christian and prove her participation in the conspiracy.
This activity is insufficient to support an inference that she agreed
to join Dr. Murray and the nurses' fraudulent activity.  The Govern-
ment had to prove that she knowingly agreed to participate in a
common scheme to meet an unlawful goal.  See <u>Monsanto</u>, 465 U.S. at
754.  The evidence did not prove that Davis committed actions suff-
icient to show an agreement to defraud Medicare beyond a reasonable
doubt.

Thus, Petitioner note that his actions were very similar to

42.

Davis.  Whereas, the court ruled that Davis's actions were nothing
like most directors involved in other health care fraud cases.  She
testified that she did not participate in the day-to-day activity
of processing the certification forms, which was completed by the
administrative office.  But see, e.g., United States v. Fuchs, 467
F.3d 889, 897 (5th Cir. 2006)(owner filled prescriptions for
hydrocodone after his company generated the prescriptions online
and paid a doctor, who never examined the patients, to approve them).
The contract between Christian and the medical directors provided
for a flat rate,  and, in accordance with health care regulations,
that rate did not fluctuate based on the amount of patients the
doctor referred.  But see, e.g., United States v. Dailey, 868 F.3d
322, 326 (5th Cir. 2017) (owner admitted to paying the doctor in
exchange for signing certification forms without supervising the
physician's assistant and testified that the doctor withheld forms
if not paid).  The record does not indicate that Christian paid
doctors to sign documents.  But see, e.g., Grant, 683 F.3d at 643-
44 (5th Cir. 2012)(director paid doctor to re-sign forged prescri-
ptions for medical supplies).  Furthermore, according to testimony,
Davis's salary was, at most $120,000.  The Government provided no
evidencd that she received funds beyond her salary.  So while the
Government alleges that Medicare paid Christian an average of $3.5
million a year during the scheme, Davis only amassed 3.4% of those
alleged ill-gotten gains.

Although the Government presented a plausible scheme of fraud-
ulence, it did not implicate Davis in the scheme with proof beyond
a reasonable doubt.  The Government did not present sufficient ev-

idence to allow any rational juror to infer that Davis agreed to
participate in a conspiracy to commit health care fraud.  As such,
we must reverse.  "Likewise the Petitioner was only paid according
to his salary.  (i.e. not including % on BOT Loans to Hospital)."

Accordingly Recent Ruling Relative to Conspiracy has Changed.
For example, what people must be logical, albeit, circumstantial,
evidence of what lies in their mind.  As such, the law has evolved
to accept concerted action when a formal agreement cannot be found.
Nevertheless, that concert of action must illustrate a conscious
commitment to a common scheme designed to achieve an unlawful ob-
jective.  The actions and the surrounding circumstances must be in-
criminating enough to warrant a finding that the government proved
the existence of an agreement beyond a reasonable doubt.  The act-
ions surrounding the defendant and the co-conspirators' conduct,
taken together, must show they intentionally entered into an agree-
ment.  Concerted action between the conspirators illustrates that
an agreement had to exist because the individuals would not have
otherwise acted in that particular manner.

Concert of action can be proven through indirect, circumstan-
tial evidence.  However, when proving an agreement exists by using
the concert of action theory, the government must present evidence
of the conspirators' individual actions that, taken together, evi-
dence an agreement to commit an unlawful objective beyond a reason-
able doubt.

The Petitioner contends as the contract employee of the multi-
level hospital system he had no responsibilities for day-to-day

44.

operations over the PHP(s). In addition, the Petitioner had no day-to-day operation over the Hospital billing practices for PHP services. All such services was performed in the Business Office under the Business Officer Manager, Assistant Manager and Supervisor. In addition, the Petitioner had no responsibilities nor oversite of physicians and other related healthcare practioners. Nevertheless, the Government accused the Petitioner of being Deliberate Indifference when he had no employee related responsibility to physicians nor maintained any medical care knowledge, nor qualified to make medical diagnosis. Thus, like both Davis and Ganji, the Petitioner depended one hundred percent (i.e. 100%) on the physicans for patient related PHP diagnosis and admissions. In addition no physican received any additional funds for patients being referred to the Hospital PHP(s). Thus, the Petitioner did not provide any incentive to physican(s) nor health care practioners (i.e. or others) to refer patients to the Hospital's PHP(s).

In conculsion, the Petitioner contends he cannot commit fraud unless the physican inform him of its fraudulent conduct and he then refuse to inform the medical staff and/or his superiors, "The Board of Directors."


Respectfully Submitted

Ernest Gibson III, Defendant Pro Se

45.

## CERTIFICATE OF SERVICE

I, Earnest Gibson III, hereby declare under penalty of perjury that I placed a true and correct copy of the foregoing: PETITIONER'S MOTION TO AMEND MEMORANDUM OF LAW IN SUPPORT OF THE PETITION UNDER U.S.C. § 2255, with postage prepaid and affixed on this 3rd day of February 2020, and properly addressed to the following:

CLERK OF THE COURT
BOB CASEY UNITED STATES COURTHOUSE
515 RUSK STREET, ROOM 5300
HOUSTON, TEXAS 77002-2600

Earnest Gibson III, Petitioner Pro Se
Reg. No. 24386-379
Federal Correctional Complex
P.O. Box 3000-Medium
Forrest City, AR 72336

EXHIBIT 18

PRIVILEGED & CONFIDENTIAL

Mr. Gibson,

Please find attached a copy of Mr. Khan's Plea Agreement. I will call you in a few minutes regarding an additional step that we would like to take relative to the information contained in the Agreement.

Best regards,
Dan

DANIEL E. GOSPIN | BIO
(713) 300-3211 (DIRECT) | (713) 300-3231 (FAX)
DGOSPIN@EBGLAW.COM

## EPSTEIN BECKER GREEN

TWO HOUSTON CENTER
909 FANNIN, SUITE 3838 | HOUSTON, TX 77010
(713) 300-3200 (MAIN) | WWW.EBGLAW.COM

*Think Green. Please consider the environment before you print this message. Thank you.*

CONFIDENTIALITY NOTE: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green, P.C. at (212) 351-4701 and destroy the original message and all copies.
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to abuse@ebglaw.com or via postal mail to Epstein Becker & Green, P.C. Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail.EBGST041706



24386-375
Earnest Gibson III
PO BOX 3400
3000 24386-3
Forrest CITY,
United States

USA FOREVER

CERTIFIED MAIL

7016 1970 0000 9117 2355

United States Courts
Southern District of Texas
F I L E D

FEB 18 2020

David J. Bradley, Clerk of Court

CLerk-Bob C
515 R
ReGN 5
HoUST 77