United States District Court
Southern District of Texas
**ENTERED**
July 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | CRIMINAL ACTION NO. H-12-600-1 |
| § | |
| § | |
| § | |
| EARNEST GIBSON III § | |

**ORDER DENYING MOTION FOR SENTENCE REDUCTION AND
THIRD MOTION FOR COMPASSIONATE RELEASE**

Federal prisoner Earnest Gibson III (Gibson III),[1] representing himself, filed a motion for a sentence reduction and compassionate release from his prison sentence, citing 18 U.S.C. § 3582. (Docket Entry No. 998). The government filed a response, (Docket Entry No. 1002), and Gibson III filed two replies.[2] (Docket Entry Nos. 1004, 1005). After carefully reviewing Gibson III's motion, the responses and replies, the record of his underlying criminal case, and the applicable law, the court denies Gibson III's motion. The reasons are explained below.

**I.   Background**

In October 2014, a jury convicted Gibson III of ten criminal charges related to his role in a Medicare-fraud scheme that resulted in $160 million in false claims. The evidence presented at trial established that Gibson III was the CEO of Riverside General Hospital in Houston, Texas. An investigation into Riverside's operations uncovered an extensive scheme involving fraudulent

---

[1]Gibson's son was a codefendant. Gibson III is the father; Gibson IV is the son. Because various pleadings and other documents reference both father and son, the court retains the numbers for clarity.

[2]Gibson III titled each of these replies as a motion for a sentence reduction and compassionate release. (Docket Entry Nos. 1004, 1005). But neither "motion" requests additional relief; instead, each appears to respond to the arguments made in the government's response. The court has considered these additional "motions" as Gibson III's replies to the government's response.

claims for Medicare-reimbursed partial hospitalization program (PHP) services. As CEO, Gibson III was responsible for signing Riverside's Medicare application, which promised Medicare that all claims submitted by Riverside were truthful and accurate. He also negotiated with patient recruiters and group-home owners to send patients to Riverside's PHPs. According to the Presentence Investigation Report, Gibson III "oversaw the systematic manipulation of approximately 2,500 Medicare beneficiaries who were fraudulently committed to inpatient treatment, were placed in PHP treatment programs that were not medically necessary, for periods extending several years in some cases, and who were not provided proper and timely medical care while being repetitively recycled through the PHPs to generate revenue for Riverside." (Docket Entry No. 424, p. 36).

The Presentence Investigation Report calculated Gibson III's offense level at 43, including enhancements for (1) the large number of vulnerable victims; (2) his role as an organizer and leader of a criminal enterprise that involved five or more participants or was otherwise extensive; (3) the sophisticated means through which the offenses were committed; and (4) his abuse of a position of trust. (*Id.* at 38-39). Gibson III's lack of past criminal offenses resulted in a criminal-history score of zero and a criminal-history category of I. (*Id.* at 39). Based on the evidence presented at trial, the information in the Presentence Investigation Report, and the court's evaluation of all of the sentencing factors, the court sentenced Gibson III to a 540-month prison term, which was 300 months below the recommended guidelines range. (Docket Entry No. 543, p. 50). The court also ordered Gibson III to pay $46,753,180.04 in restitution. (Docket Entry No. 508). The Fifth Circuit affirmed Gibson III's convictions and sentences. *See United States v. Gibson*, 875 F.3d 179 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2664 (2018).

In May 2020, Gibson III filed a motion for compassionate release, asking to be released from the remainder of his prison sentence and placed on supervised release due to the threat of COVID-19. (Docket Entry No. 873). The court denied that motion, concluding that releasing Gibson III at that time would be "disproportionate to the roughly 480 months that remain in Gibson's sentence" and that it would "introduce unwarranted disparities between his sentence and those given to other defendants convicted in the fraud scheme." (Docket Entry No. 896, p. 6).

In December 2021, Gibson III filed a second motion seeking compassionate release. (Docket Entry No. 950). As grounds for his release, Gibson III alleged that he had contracted a long-COVID infection and also suffered from other health problems; that his wife had been diagnosed with a recurrence of lung cancer and needed him to be a caregiver; and that he had received an "unusually long sentence." (*Id.* at 2). The court denied that motion, finding that Gibson III had failed to exhaust his administrative remedies and that the other circumstances he identified were not sufficiently extraordinary or compelling when considered in light of the nature of his offenses and the need for punishment. (Docket Entry No. 972).

Gibson III has now filed a third motion seeking a "massive sentence reduction" and compassionate release. (Docket Entry No. 998). Gibson III primarily contends that his conviction was wrongly entered, his sentence was improperly calculated, and his sentencing proceedings were flawed. But he also alleges that he is entitled to a sentence reduction under the recently enacted United States Sentencing Guidelines provision for zero-point offenders. (Docket Entry No. 998-1, pp. 4-5). Gibson III also contends that he is entitled to a sentence reduction under the "safety-valve provision." (*Id.* at 9). In addition, Gibson III alleges that he is entitled to compassionate release based on his medical conditions, his conduct in prison, and the conditions at FCI Butner Medium II, where he is now assigned.

The government opposes Gibson III's motion, contending that he does not meet the criteria for a sentence reduction as a zero-point offender. (Docket Entry No. 1002). The government also contends that Gibson III failed to exhaust his administrative remedies before filing his motion for compassionate release. (*Id.*). Gibson III filed two replies, in which he responds to the government's response but does not address his failure to exhaust his administrative remedies. (Docket Entry Nos. 1004, 1005).

**II.     Discussion**

Gibson III's motion alleges that he is entitled to both a sentence reduction and compassionate release, and he mingles his arguments concerning each type of relief throughout the motion. Because the issues related to these two claims differ, the court addresses them separately.

**A.     Motion for a Sentence Reduction**

Courts generally "may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). An exception to this general rule arises when the original sentence was based on a Sentencing Guidelines range that the Sentencing Commission has subsequently lowered. *Id.* (citing 18 U.S.C. § 3582(c)(2)).

In 2023, the Commission added § 4C1.1(a) to the Guidelines, which provides for a two-level reduction in offense level for certain offenders who score zero criminal history points. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.10(e)(2) (U.S. Sent'g Comm'n Nov. 1, 2023). The new provision states:

> § 4C1.1. Adjustment for Certain Zero-Point Offenders
>
> (a) ADJUSTMENT.—If the defendant meets all of the following criteria:

4

>(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
>(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
>
>(3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
>(4) the offense did not result in death or serious bodily injury;
>
>(5) the instant offense of conviction is not a sex offense;
>
>(6) the defendant did not personally cause substantial financial hardship;
>
>(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
>(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
>
>(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
>
>(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;
>
>decrease the offense level determined under Chapters Two and Three by 2 levels.

U.S. SENT'G GUIDELINES MANUAL § 4C1.1(a) (U.S. Sent'g Comm'n Nov. 1, 2023).  This change applies retroactively.  *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.10(e)(2) (U.S. Sent'g Comm'n Nov. 1, 2023).

It is undisputed that Gibson III scored zero criminal-history points on his Presentence Investigation Report.  (Docket Entry No. 424, p. 39).  Because the Commission has lowered the

5

Guidelines range and declared that the change applies retroactively, Gibson III is eligible for the two-level reduction for zero-point offenders if he meets all of the other requirements. But the Presentence Investigation Report shows that Gibson III received a four-level enhancement under § 3A1.1(b) for committing offenses involving a large number of vulnerable victims, and a four-level enhancement under § 3B1.1(a) for having an aggravating role in the offenses. (*Id.* at 38-39). Because Gibson III does not meet the requirements of § 4C1.1(a)(9) and § 4C1.1(a)(10), he is not eligible for the two-level reduction in his offense level.

In his current motion, Gibson III contends that the enhancements under § 3A1.1 and § 3B1.1 were wrongly imposed at his original sentencing. (Docket Entry Nos, 998, 998-1). But this argument is improper in a motion to reduce sentence. *See Dillon,* 560 U.S. at 831 (a motion for a sentence reduction under § 3582(c)(2) is not a vehicle for raising errors in the original sentence); *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023) ("[A] prisoner cannot use § 3582(c) to challenge the legality or duration of his sentence; such arguments can, and hence *must*, be raised under [28 U.S.C. § 2255]."); *United States v. Dedrick,* 402 F. App'x 903, 904 (5th Cir. 2010) (per curiam) ("[A]rguments challenging [a prisoner's] original sentencing are not cognizable in a § 3582(c)(2) motion as such a motion is not a second opportunity to present mitigating factors to the sentencing judge, nor is it a challenge to the appropriateness of the original sentence." (cleaned up) (quoting *United States v. Whitebird,* 55 F.3d 1007, 1011 (5th Cir. 1995)).

In addition to his claim concerning the zero-point-offender provision, Gibson III also alleges that he is entitled to a sentence reduction under the Sentencing Guidelines' safety-valve provision. (Docket Entry Nos. 998-1, p. 9; 1004, p. 3. Citing *Pulsifer v. United States*, 601 U.S. 124 (2024), he contends that he meets all the criteria for relief under that provision. But the safety-valve provision does not apply to Gibson III's sentence for three reasons. First, the safety-valve

provision applies only to certain enumerated controlled substances convictions. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). Gibson III was not convicted of any controlled substances offenses. Second, the provision does not apply to defendants who were an "organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f)(4); U.S.S.G. § 5C1.2(a)(4). The Presentence Investigation Report indicates that Gibson III was an organizer or leader of the offense, and his sentence was enhanced on that basis. Third, the safety-valve provision permits the district court to sentence a qualifying defendant "without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). Gibson III was not sentenced to a statutory minimum sentence. For each of these reasons, the safety-valve provision does not afford Gibson III any relief from his sentence.

In sum, Gibson III may not relitigate his claims concerning the vulnerable victim and aggravated role enhancements in a motion to reduce sentence, and those enhancements make him ineligible for the two-level sentence reduction he seeks as a zero-point offender. In addition, Gibson III's conduct does not fall within the scope of the safety-valve provision, and he is not entitled to a reduction in his sentence on that basis. Gibson III's motion for a sentence reduction is denied.

### B. Motion for Compassionate Release

In the alternative, Gibson III seeks compassionate release, alleging that "extraordinary and compelling reasons" warrant his early release from imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Because Gibson III did not exhaust his administrative remedies before filing this motion, it must be denied.

Section 3582(c) sets forth in clear language "what the defendant must do before [he] files a motion for compassionate release in federal court." *United States v. Franco*, 973 F.3d 465, 468

(5th Cir.), *cert. denied*, 141 S. Ct. 920 (2020). The statute requires the defendant to submit a request to the Bureau of Prisons asking it to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). "The statute's language is mandatory," and if the defendant has not filed a request for release with the Bureau of Prisons, "Congress has commanded that a 'court *may not* modify a term of imprisonment.'" *Franco*, 973 F.3d at 468 (quoting 18 U.S.C. § 3582(c)) (emphasis in original). Because the exhaustion provision is a "mandatory claim-processing rule," this court must enforce it when the issue is raised by the government, as the government has done here. *Id.*

Gibson III filed a request for release with the Bureau of Prisons in April 2020 before he filed his first motion for compassionate release. (Docket Entry No. 958-1). He did not file a request for release with the Bureau of Prisons before filing his second motion for compassionate release, and the court denied his motion based on his failure to exhaust his administrative remedies. (Docket Entry No. 972). Gibson III bases his current motion on circumstances that arose after he filed his first motion, but he has not provided the Bureau of Prisons with "the first opportunity to assess the new circumstances and determine whether compassionate release is warranted." *United States v. Ezukanma*, No. 3:15-CR-0254-B-1, 2021 WL 389827, at *2 (N.D. Tex. Feb. 4, 2021). Because of these changed circumstances, Gibson III's April 2020 request for release is stale and will not support the conclusion that he has exhausted his administrative remedies. *See United States v. Etti*, No. 3:16-CR-0240-B-3, 2021 WL 3710692, at *2 (N.D. Tex. Aug. 20, 2021) (concluding that a one-year-old request for release that did not address circumstances that had changed since the request was originally submitted was stale and did not satisfy the exhaustion requirement of § 3582); *United States v. Parker*, No. 3:17-CR-0446-B-2, 2021 WL 389830 (N.D. Tex. Feb. 4, 2021) (finding 7-month-old request for release too distant to support a motion under

8

§ 3582 when the defendant's circumstances had changed); *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) ("In order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion.").

Despite knowing of the exhaustion requirement based on the denial of his second motion, Gibson III does not allege that he filed a new request for release with the Bureau of Prisons before filing his current motion. Gibson III did not address the issue even after the government raised it in its response to Gibson III's motion. Because Gibson III did not give the Bureau of Prisons the opportunity to consider the changed circumstances he raises in his current motion, he has not exhausted his administrative remedies as required by § 3582(c). The court dismisses his motion for compassionate release without prejudice based on his failure to exhaust his administrative remedies.

### III. Conclusion

Earnest Gibson III's motions for a sentence reduction and compassionate release, (Docket Entry Nos. 998, 1004, 1005), are denied.

SIGNED on July 16, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge